Argued and submitted June 5, order set aside September 6, 1989

## APPLEBEE,
*Petitioner,*

*v.*

## MOTOR VEHICLES DIVISION,
*Respondent.*

(DMV 22 8806030 8068; CA A50562)

778 P2d 995

John Halpern, Jr., Eugene, argued the cause and filed the brief for petitioner.

Vera Langer, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

**GRABER, P. J.**

Petitioner seeks review of an order of the Motor Vehicles Division (MVD) suspending his driving privileges. We set aside the order.

The referee found the following facts, which are supported by substantial evidence in the record. In March, 1987, petitioner obtained motor vehicle insurance from Guaranty National Insurance Company (Guaranty) through its agent, Bilyeu-Miller (Bilyeu). He received monthly billings for his insurance premium. Guaranty canceled his coverage effective November 5, 1987, because one of his payment checks had been returned for nonsufficient funds (NSF). On November 28 or 29, 1987, petitioner called Bilyeu to add a 1972 Ford pickup to his insurance policy. Bilyeu advised him that coverage would be effective immediately but did not tell him that his insurance had been canceled. The agent was unaware of the cancellation. Petitioner paid his December premium on December 1, 1987. On December 3, 1987, Guaranty sent a notice of cancellation and a notice that the pickup could not be added to the policy. Guaranty accepted the December 1 premium payment on December 8. On December 28, 1987, petitioner was involved in an accident while driving the pickup. At the time of the accident, he was not in compliance with the financial responsibility laws, see ORS 806.010,[1] because he had no insurance, but he did not learn that he had no insurance until after the accident.

ORS 809.410(19) requires MVD to suspend the license of anyone driving in violation of ORS 806.010, which

---

[1] ORS 806.010 provides, in part:

"(1) A person commits the offense of driving uninsured if the person operates a motor vehicle that is registered in this state on any highway or premises open to the public in this state without either:

"(a) The person being insured while driving the vehicle under a motor vehicle liability insurance policy that meets the requirements described under ORS 806.080; or

"(b) The person or the owner of the vehicle being in compliance with the financial responsibility requirements of this state.

"* * * * *

"(3) In addition to other penalties under this section the following apply:

"(a) A person who is involved in a motor vehicle accident at any time the person is in violation of this section is subject to suspension of the person's driving privileges under ORS 809.410."

petitioner now concedes that he was doing. However, he contends that MVD erred in not rescinding his suspension pursuant to ORS 809.450, which provides, in relevant part:

"(1)  If a person whose driving privileges have been suspended for one of the reasons specified in subsection (2) of this section requests that the suspension be rescinded and specifies the reason for the request, the division may provide a hearing to determine the validity of the suspension. The division may rescind a suspension only as provided in subsection (3) of this section.

"(2)  This section applies to the following suspensions under ORS 809.410 for the following:

"* * * * *

"(c)  Involvement in a motor vehicle accident when the division has determined that the person has been operating a vehicle in violation of ORS 806.010.

"(3)  The granting of a hearing under this section shall not stay the suspension. However, the division shall rescind the suspension if the division determines:

"* * * * *

"(e)  That at the time of the accident the person reasonably and in good faith believed that the person was in compliance with financial responsibility requirements and the person is currently in compliance with financial responsibility requirements."

The referee found, first, that at the time of the accident petitioner believed that he had insurance[2] but, second, that that belief was neither reasonable nor in good faith. We hold that there is no substantial evidence to support the second finding.

The referee reasoned:

"The Hearings Referee does not find Petitioner's assertions plausible. Petitioner's accident occurred almost two months after the NSF check was written; at the very least, Petitioner, in the course of reasonable monitoring of his financial affairs, would have to have been aware that the check was not paid. Petitioner also asserts that the insurance notices were never received, but the copies submitted for the

---

[2] The referee also found that petitioner was in compliance with the financial responsibility law at the time of the hearing. ORS 809.450(3)(e). Substantial evidence supports that finding.

record indicate they were sent to Petitioner at his residence address. In short, the evidence supports a conclusion that even if Petitioner was not aware of his uninsured status prior to the accident, he should have been. Petitioner's 'reasonableness' is all the more questionable given his testimony that he never received a refund check from the insurance agent for the December payment, yet the evidence shows he endorsed a . check from the agent dated January 18, 1988.

"Perhaps the more critical question involves the NSF check in the first instance. Petitioner had no explanation for the insufficient funds. Even if Petitioner was unaware of the NSF check, the Hearings Referee cannot find Petitioner's belief that he was covered to have been reasonable and held in good faith when it was premised on payment with a 'bad check,' for which Petitioner has offered no explanation. While Petitioner may not have known he was uninsured at the time of his accident, a reasonable person acting in good faith would have known and acted to correct the situation."

There are two deficiencies in that reasoning. First, the referee found that Guaranty sent the cancellation notices to petitioner "at his residence address." There is no such evidence. Instead, the record shows that the notices were sent to Z5737 Fleck Road; petitioner lives at 25737 Fleck Road.[3]

Second, the referee reasoned, in essence, that petitioner should have known that he had written an NSF check. The referee did not find, and there is no evidence, that petitioner's bank had notified him or that he had otherwise learned of the returned check by December 28.[4] There is no finding and no evidence that petitioner received a bank statement that, in the usual course, would have covered the date of the NSF check. There is no finding and no evidence that he wrote the NSF check intentionally. Thus, there is no evidence to support the referee's finding that petitioner should have known of the NSF check.

The order is devoid of any explanation as to why the

---

[3] The referee found that Bilyeu received copies of the notices on December 7, 1987, but that the agent had no contact with petitioner between that date and December 29. Substantial evidence supports those findings.

[4] Further, even if petitioner had known that his check was returned, it does not necessarily follow that he knew that his insurance was cancelled, in view of the fact that Guaranty accepted his December payment five days after it had sent the cancellation notices.

facts that *are* supported by substantial evidence lead to the ultimate finding that petitioner's belief was not reasonable and in good faith.[5] On this record, the referee could not reasonably have reached that finding. ORS 183.482(8)(c); *City of Portland v. Bureau of Labor and Ind.,* 298 Or 104, 119, 690 P2d 475 (1984); *see Armstrong v. Asten-Hill Co.,* 90 Or App 200, 206-07, 752 P2d 312 (1988).

Order set aside.

---

[5] The facts that petitioner received a premium refund a few weeks *after* the accident and that he did not explain the reason for overdrawing his bank account do not lead logically to the ultimate finding.